UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| BOZEL S.A., *et al.,* | : | Bankr. No. 10-11802 (SHL) |
| Debtors. | : | |
| | : | |

-----------------------------------------------------x

| | | |
|---|---|---|
| TRILLIANT FUNDING, INC., | : | |
| as Plan Administrator of Bozel S.A. | : | |
| and Bozel LLC, | : | Case No. 16-CV-3739-ALC |
| | : | |
| Appellant, | : | |
| | : | |
| – against – | : | |
| | : | |
| MICHEL MARENGERE, | : | |
| | : | |
| Appellee. | : | |

-----------------------------------------------------X

---

## BRIEF OF APPELLANT, TRILLIANT FUNDING, INC.,
## AS PLAN ADMINISTRATOR OF BOZEL S.A. AND BOZEL LLC

---

RICH MICHAELSON MAGALIFF MOSER, LLP
Robert N. Michaelson
Eric T. Moser
335 Madison Avenue, 9th Floor
New York, NY 10017
646.453.7851

*Attorneys for Appellant*

Date:  New York, New York
       June 15, 2016

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... ii

CORPORATE DISCLOSURE STATEMENT ......................................1

BASIS FOR APPELLATE JURISDICTION...........................................1

STATEMENT OF ISSUES PRESENTED.................................................2

APPLICABLE STANDARD OF REVIEW...............................................2

STATEMENT OF THE CASE.................................................................4

SUMMARY OF THE ARGUMENT .......................................................9

ARGUMENT ...........................................................................................11

    I.    The Bankruptcy Court's Decision Is Premised on an Erroneous View of the Law Governing a Motion To Dismiss Based on Alleged Defects in Service of Process in the Absence of an Evidentiary Hearing ..................................................................11

    II.    The Bankruptcy Court Misinterpreted the Service Order...................16

    III.    The Bankruptcy Court's Application of the Flexible Due Diligence Standard Cannot Be Reconciled with the Evidence in the Record...........................................................19

CONCLUSION ........................................................................................25

# TABLE OF AUTHORITIES

**Cases**

AIG Managed Market Neutral Fund v. Askin Capital Management, L.P.,
197 F.R.D. 104 (S.D.N.Y. 2000) ...............................................................24

Altvater Gessler-J.A. Baczewski International (USA) Inc. v.
Sobieski Destylarnia S.A., No. 06 Civ 6510 (HB),
2010 WL 2813617 (S.D.N.Y. July 16, 2010) ...........................................17

Aqua Shield, Inc. v. Inter Pool Cover Team,
No. 05 CV 4880 (CBA), 2007 WL 4326793 (E.D.N.Y. Dec. 7, 2007) .................12

Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194 (2d Cir. 1990)............14

Cody v. Mello, 59 F.3d 13 (2d Cir. 1995) ................................................24

Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.,
722 F.3d 81 (2d Cir. 2013)...............................................................3, 14

In re Bozel S.A., 434 B.R. 86 (Bankr. S.D.N.Y. 2010)..............................................4

In re Chateaugay Corp., 922 F.2d 86 (2d Cir. 1990) ..................................................1

In re Crysen/Montenay Energy Co., 166 B.R. 546 (Bankr. S.D.N.Y. 1994) ....12, 22

In re Southold Development Corp., 148 B.R. 726 (E.D.N.Y. 1992)......................22

Lynch v. City of New York, 589 F.3d 94 (2d Cir. 2009) .............................3, 10, 19

Meilleur v. Strong, 682 F.3d 56 (2d Cir. 2012) ....................................................2, 23

Pabst Licensing GMBH & Co. KG v. Sunonwealth Electric Machine Ind. Co.,
Ltd., No. 03 Civ. 1001, 2004 WL 1977441 (N.D. Ill. Aug. 27, 2004)....................23

Sharkey v. Quarantillo, 541 F.3d 75 (2d Cir. 2008) ................................................14

United States v. Shehyn, No. 04 Civ. 2003 (LAP),
2008 WL 6150322 (S.D.N.Y. Nov. 26, 2008).......................................................17

U.S. v. Spallone, 399 F.3d 415 (2d Cir. 2005) .....................................................3, 17

Zapata v. City of New York, 502 F.3d 192 (2d Cir. 2007) ......................................23


## Statutes, Rules, and Other Authorities

28 U.S.C. § 158(a)(1) ...........................................................................................1

Fed. R. Civ. P. 4(f) ...................................................................................12, 18, 19

Fed. R. Civ. P. 4(m) .........................................................................2, 6, 12, 17, 18

Fed. R. Civ. P. 12 ...............................................................................................8, 15

Fed. R. Bankr. P. 7004(a)(1) ...................................................................................2

Advisory Committee Notes to the 1993 Amendments to Fed. R. Civ. P. 4 ...........24

## CORPORATE DISCLOSURE STATEMENT

Trilliant Funding, Inc. ("Trilliant") has no corporate parents and no publicly-held corporation owns 10% or more of its stock.

## BASIS FOR APPELLATE JURISDICTION

The Bankruptcy Court's *Order Granting Defendant Michel Marengere's Motion To Dismiss The Complaint* dated May 17, 2016 (the "Order") is a final order because it dismissed the entirety of Trilliant's adversary proceeding against Mr. Marengere (the "Defendant").  (A. 306-7); see In re Chateaugay Corp., 922 F.2d 86, 90 (2d Cir. 1990) (noting that "[o]rders in bankruptcy cases may be immediately appealed if they resolve discrete disputes within the larger case" and that "the disposition of a discrete dispute is generally considered to be the resolution of an adversary proceeding within the bankruptcy action.") (citations omitted).

This Court therefore has appellate jurisdiction over the Order pursuant to 28 U.S.C. § 158(a)(1) based on the entry of the Order and Trilliant's filing of a Notice of Appeal on May 11, 2016 (A. 262-64) and Amended Notice of Appeal on May 18, 2016 (A. 308-322).[1]

---

[1]  All citations to the Appendix compiled pursuant to Fed. R. Bankr. P. 8018(b) are noted as "A. __").

## STATEMENT OF ISSUES PRESENTED

1. Whether the Bankruptcy Court abused its discretion in concluding that Trilliant failed to exercise reasonable due diligence in effecting service on a foreign defendant in a timely fashion?

   Standard of Review:  Abuse of discretion.

2. Whether the Bankruptcy Court abused its discretion by failing to view the evidence in the record in the light most favorable to Trilliant and failing to make all reasonable inferences in favor of Trilliant?

   Standard of Review:  Abuse of discretion.

3. Whether the Bankruptcy Court abused its discretion by imposing an unduly high burden of proof on Trilliant in connection with Defendant's motion to dismiss?

   Standard of Review:  Abuse of discretion.

4. Whether the Bankruptcy Court erred when it concluded that the May 2, 2013 Order Extending Time to Effectuate Service (the "Service Order"), which was entered by a different Bankruptcy Judge, governed the time to serve the Defendant in this adversary proceeding in a foreign jurisdiction?

   Standard of Review:  *De novo.*

5. Whether the Bankruptcy Court abused its discretion in concluding that Trilliant had not established a *prima facie* case of proper service in this case?

   Standard of Review:  Abuse of discretion.

## APPLICABLE STANDARD OF REVIEW

The Bankruptcy Court's decision to dismiss the complaint based on Trilliant's alleged failure to effectuate timely service of process under Fed. R. Civ. P. 4(m), as incorporated by Fed. R. Bankr. P. 7004(a)(1), is reviewed for abuse of discretion.  Meilleur v. Strong, 682 F.3d 56, 61 (2d Cir. 2012) (citation omitted).

A trial court "has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." Lynch v. City of New York, 589 F.3d 94, 99 (2d Cir. 2009) (citations omitted).

In determining whether the Bankruptcy Court abused its discretion, the Bankruptcy Court's underlying legal conclusions, including conclusions drawn from the pleadings and affidavits without the benefit of an evidentiary hearing, are reviewed *de novo*. Dorchester Financial Securities, Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013) ("Where, as here, the district court relies on the pleadings and affidavits and does not conduct a 'full-blown evidentiary hearing,' we review the district court's resulting conclusions *de novo*. . . . 'In doing so, we construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor.'"). Id. (citations omitted).

Likewise, the Bankruptcy Court's interpretation of an order (i.e. the Service Order) that it did not personally draft is subject to *de novo* review. See U.S. v. Spallone, 399 F.3d 415, 423 (2d Cir. 2005) ("Because Judge Hurley did not draft the April 18, 2002 order, we apply traditional *de novo* review to his interpretation.").

## STATEMENT OF THE CASE

On April 6, 2010, Bozel S.A., a Luxembourg corporation with a number of international subsidiaries, filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101 et seq.) (A. 10).

Shortly after the commencement of its bankruptcy case, Andrew Bickerton (the "Liquidator"), the court-appointed liquidator of Wellgate International Ltd., the sole shareholder of Bozel S.A., instituted an adversary proceeding against the Defendant seeking to: (i) remove the Defendant from his position as the sole director of Bozel S.A.; (ii) confirm the Liquidator's authority to exercise all corporate governance authority; (iii) compel the Defendant to turn over all corporate books and records of Bozel S.A. to the Liquidator; (iv) restrain the Defendant from interfering with the Liquidator's rights vis-à-vis Bozel S.A., or any of its subsidiaries, including Bozel LLC (together with Bozel, S.A., collectively, the "Debtors").  See generally In re Bozel S.A., 434 B.R. 86, 91 (Bankr. S.D.N.Y. 2010) (describing the relief sought by the Liquidator's complaint).

In connection with that lawsuit, the Defendant challenged the Bankruptcy Court's authority to exercise personal jurisdiction over him in light of his status as a Canadian citizen with allegedly insufficient connections to the United States. The Bankruptcy Court swiftly rejected that challenge, reasoning in part that:

> First, Marengere has purposely availed himself of the privilege of conducting business in the U.S. as he is listed as the registered

4

agent, director, or managing member of three corporate entities in Florida . . . Second, the address 555 South Federal Highway, Suite 260, Boca Raton, Florida was listed as Marengere's professional address in both the filings of the Luxembourg Proceedings as well as the Bozel Governance Agreement.  Marengere verified at the § 341 [meeting of creditors] that he is in control of this Florida location. . . . Further, Debtor's proposed counsel represented represented that Marengere conducts meetings with the vice president of Bozel LLC, Mr. Joseph Mineracao, in New York, and management meetings relating to Bozel LLC and the Debtor occur in New York eighty-five percent of the time.

Id. at 98.

On January 5, 2011, Bozel LLC filed a separate voluntary petition under chapter 11 of the Bankruptcy Code.  (A. 10).

On February 9, 2012, the Bankruptcy Court (Gonzalez, J.) entered an order confirming the Debtors' Amended Joint Plan of Liquidation, which, among other things, provided for the appointment of Trilliant as the "Plan Administrator" in order to liquidate and distribute the remaining assets of the Debtors' combined estates.  (A. 10-11).  To date, the Debtors' creditors have received only a small fraction of the amounts owed to them.

On January 4, 2012, Trilliant filed an adversary proceeding against the Defendant, seeking damages of $15 million based on his breach of fiduciary duty in causing Bozel LLC, a subsidiary of Bozel S.A. controlled by the Defendant, to use its assets to satisfy the personal debts of the Defendant, and those of other members of the Bozel S.A. corporate family.  (A. 16-17).

On April 16, 2013, Trilliant filed an application seeking an extension of its time to effectuate service of process with respect to a number of foreign defendants, including Mr. Marengere.  (A. 36-43).  In its motion, Trilliant provided the Court with a status report, which indicated that the complaint and summons were "With Process Server/Local Agent-Authority for Service."  (A. 39).  The motion further clarified that, since the 120-day limitation set forth in Fed. R. Civ. P. 4(m) is expressly inapplicable to foreign service, "[t]he Plan Administrator is only seeking an extension with regard to these individual defendants to the extent that he might be able to make service upon them within this United States."  (A. 41).  The Bankruptcy Court granted Trilliant's motion by order dated May 2, 2013 (the "Service Order").  (A. 47-48), and thereby extended Trilliant's time to serve Mr. Marengere to the extent he could be located domestically.

After its initial efforts at service of process failed, Trilliant hired a series of private investigators in an effort to find the Defendant so that he might be personally served with process pursuant to the Hague Convention.  Unfortunately, three successive investigators were unable to locate Mr. Marengere, either at his supposed home at 29 Montee due Golf, Lac-Beauport (the "Quebec Property"), which the investigators found to be empty and listed for sale (A. 196), or at any of the numerous business addresses with which they determined he might be affiliated.  (A. 197-210).

During a routine status conference held on December 13, 2013, Trilliant advised the Bankruptcy Court (Peck, J.) of the difficulties it had encountered in attempting to serve Mr. Marengere, and of its continuing efforts in that regard.  (A. 340-41).

In the summer of 2014, Trilliant's counsel engaged in several telephone conversations with Mr. Marengere's counsel, Mark Frankel, and asked him for information concerning Mr. Marengere's whereabouts.  (A. 211-12).  Mr. Frankel indicated that he was in regular communication with Mr. Marengere, but that he was not aware of his client's physical location, and did not possess any documents that would have shown Mr. Marengere's location (A. 211-12).

In a last ditch effort to salvage this case, Trilliant thereafter hired yet another private investigator, who discovered that the Defendant had owned a multi-million dollar property in Boca Raton, Florida between 2004 and 2015 (A. 184, 191), but ultimately determined that Mr. Marengere was then in residence at the Quebec Property.  Trilliant therefore arranged for him to be served at the Quebec Property by the Canadian authorities on February 20, 2015.  (A. 177-79).

Mr. Marengere responded to the complaint by filing a motion to dismiss based on insufficient service of process and lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), (4), and (5).  (A. 4).  Trilliant filed a response to the motion to dismiss, as well as a supporting affidavit detailing its efforts to complete service.

(A. 5).  The Defendant thereafter filed a reply brief and affidavit, (A. 5), and oral argument was held on July 28, 2015. (A. 265-305).

During the argument, Trilliant's counsel requested the opportunity to present evidence on the contested questions of fact surrounding its diligence in serving Mr. Marengere.  (A. 295), and objected to the Court's consideration of Mr. Marengere's affidavits and submissions as competent evidence.  (A. 296).  The Bankruptcy Court denied the request for an evidentiary hearing (A. 297), and indicated that it would be considering all of the pleadings and affidavits submitted by both parties "at . . . face value."  (A. 295).

With the Bankruptcy Court's permission, both Trilliant and Mr. Marengere made supplemental submissions concerning the burdens of proof applicable to the Defendant's motion to dismiss, which confirmed that, while Plaintiff bears the burden of establishing the adequacy of service (A. 252), in the absence of an evidentiary hearing, the Court must evaluate all submissions in the light most favorable to the Plaintiff, which is only obligated to establish a *prima facie* case of adequate and timely service.  (A. 251).

On April 14, 2016, the Bankruptcy Court issued its *Memorandum of Decision Granting Motion to Dissmiss* (sic) (the "<u>Decision</u>"), in which it concluded that: (i) "Trilliant's efforts at service and the resulting delay were not reasonable" (A. 259); (ii) "Trilliant's failure to serve the Defendant by the October

21, 2013 deadline set in the Service Order" was "[o]f particular relevance." (A. 259); and (iii) "the passage of such an extensive period of time prejudices the Defendant." (A. 261).

On May 11, 2016, following issuance of the Decision, but prior to the entry of the Order, Trilliant filed a Notice of Appeal. (A. 6). On May 18, 2016, after the Order was entered, Trilliant filed an Amended Notice of Appeal. (A. 7).

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court abused its discretion in several important respects, each of which provides independent grounds for reversal of the Order and remand of this case to the Bankruptcy Court for further proceedings.

First, the Bankruptcy Court misapprehended the nature of Trilliant's burden of proof with respect to service of process in light of the procedural posture of the case. Having decided to resolve the adequacy of service of process without the benefit of an evidentiary hearing, the Bankruptcy Court was obligated to accept the factual averments of ***Trilliant's*** pleadings and affidavit as true, and to make all reasonable inferences in ***Trilliant's*** favor. Instead, the Bankruptcy Court credited various assertions by the Defendant that contradicted Trilliant's version of events, and failed to view the allegations in the record in the light most favorable to Trilliant. This error of law infects the Bankruptcy Court's Decision from

beginning to end, and constitutes an abuse of discretion warranting reversal of the Order.

Second, the Bankruptcy Court misinterpreted the import of the Service Order, which, when construed in light of the motion that it granted, did not purport to establish a hard deadline for foreign service of process.  Instead, it merely extended the period during which the Defendant could have been served domestically had Trilliant been fortunate enough to learn that Mr. Marengere was physically present in the United States.  While the Bankruptcy Court's error in this regard is understandable given that the Service Order was entered by a different judge, the Bankruptcy Court expressly relied on its misinformed understanding of the Service Order as evidence of Trilliant's failure to exercise reasonable diligence, which constituted an error of law that resulted in an abuse of discretion, which in turn warrants reversal of the Order.

Finally, even if one assumes, contrary to the record, that the Bankruptcy Court properly understood the governing law and attempted to apply it to the facts of this case, then the Bankruptcy Court abused its discretion by reaching "a decision that cannot be located within the range of permissible decisions."  Lynch v. City of New York, 589 F.3d at 99.  Accepting Trilliant's assertions of fact as true, as the Bankruptcy Court was obligated to do, Trilliant undertook an extensive manhunt, involving four separate private investigators over a two-year period prior

to locating and successfully serving the Defendant.  The Bankruptcy Court's conclusion that this did not represent reasonable diligence is simply not a reasonable application of the law to the facts.  Likewise, crediting the Defendant's unsubstantiated claims of prejudice involved an abuse of the Bankruptcy Court's discretion since the factual allegations before the Court established that the Defendant was aware of Trilliant's lawsuit long before he was served, and could have, had he chosen to do so, begun to prepare a defense rather than evading service of process.

Under the circumstances, in view of Trilliant's substantial and repeated efforts at service, and the absence of any evidence of prejudice to the Defendant, the Bankruptcy Court's conclusion that Trilliant's service of process was untimely does not lie within the range of permissible decisions.  Instead, it represents an abuse of discretion warranting reversal of the Order.

## **ARGUMENT**

### I. **The Bankruptcy Court's Decision Is Premised on an Erroneous View of the Law Governing a Motion To Dismiss Based on Alleged Defects in Service of Process in the Absence of an Evidentiary Hearing**

Trilliant does not object to the Bankruptcy Court's articulation of the legal standard applicable to the determination of whether service of process in a foreign country is timely.  Trilliant objects instead to the Bankruptcy Court's failure to apply that standard in a manner befitting the procedural posture of the case, and its

11

decision to make factual findings based solely on the parties' allegations in the absence of an evidentiary hearing, or any opportunity for pretrial discovery.

The timeliness of service in a foreign country is measured, not by reference to any pre-defined period of time, but rather under a "flexible due diligence" standard, which considers "(1) the reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to defendants from the delay." In re Crysen/Montenay Energy Co., 166 B.R. 546, 553 (Bankr. S.D.N.Y. 1994); see also Aqua Shield, Inc. v. Inter Pool Cover Team, No. 05 CV 4880 (CBA), 2007 WL 4326793, *2 (E.D.N.Y. Dec. 7, 2007) (noting that "the 120-day time limit of Rule 4(m) does not apply to service of process made pursuant to Rule 4(f). Instead, courts have used a 'flexible due diligence standard' in determining whether service of process under Rule 4(f) is timely.'"); (A. 257).

The Defendant did not request, and the Bankruptcy Court rejected Trilliant's request for, an evidentiary hearing in connection with Defendant's motion to dismiss. (A. 297). Having made that decision, the Bankruptcy Court nevertheless proceeded to rely on the parties' respective assertions to make findings about various contested factual matters relevant to the application of the flexible due diligence standard, including: (i) whether and when the Defendant was present at the Quebec Property (A. 260 n.4); (ii) whether Trilliant had notice of the Defendant's whereabouts between the filing of the Complaint in this matter and the

Defendant's successful service in February 2015 (A. 255); (iii) whether the Defendant suffered any appreciable prejudice as the result of the delay in service (A. 261); and (iv) whether the Defendant intentionally evaded service.  (A. 261).

The Bankruptcy Court's Decision does not explain precisely what significance it attributed to these factual finding in reaching its ultimate legal conclusion that Trilliant failed to exercise reasonable diligence in attempting to serve the Defendant.  Indeed, the Decision lacks any discussion of the burden of proof the Bankruptcy Court applied.  Fortunately, the transcript of the oral argument in this matter, which contains the following colloquy between the Bankruptcy Court and counsel for Trilliant, offers some insight into the Bankruptcy Court's thinking about the nature of the record before it:

> Mr. Moser:  . . . I would ask for the opportunity to present evidence.
>
> The Court:   But I don't – I don't understand how that works. There was a Motion.  It had declarations – well, it had attachments, it had declaration attachments.  Then you filed something had a declaration with attachments.  I have letters.  There's been an objection to some of the information you've presented.  **For purposes of argument, I'm treating it – I'm taking it at its face value.**  But I have – there was a chance to present evidence, so I don't quite understand what your – so I have your declaration and then I have three exhibits.

(A. 295) (emphasis added).

Given the lack of an opportunity for discovery and the absence of any *admissible* evidence, the Bankruptcy Court was not at liberty to simply take the

parties' contentions at face value, and decide the Defendant's motion to dismiss on

the basis of its preferred interpretation of dueling affidavits.  Instead, as the Second

Circuit has noted on numerous occasions in connection with preliminary

challenges to a court's exercise of personal jurisdiction, "the showing a plaintiff

must make to defeat a defendant's claim that the court lacks personal jurisdiction

over it 'varies depending on the procedural posture of the litigation.'"  Dorchester

Financial Securities, 722 F.3d at 84 (quoting Ball v. Metallurgie Hoboken-

Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)).  In Ball, the Second Circuit held

that:

> **Prior to discovery, a plaintiff challenged by a jurisdiction
> testing motion may defeat the motion by pleading in good faith,
> legally sufficient allegations of jurisdiction.  At that preliminary
> stage, the plaintiff's *prima facie* showing may be established
> solely by allegations.**  After discovery, the plaintiff's *prima facie*
> showing, necessary to defeat a jurisdiction testing motion, must
> include an averment of facts that, if credited by the trier, would
> suffice to establish jurisdiction over the defendant.  At that point,
> the *prima facie* showing must be factually supported.

Ball, 902 F.2d at 197 (emphasis added); accord Sharkey v. Quarantillo, 541 F.3d

75, 83 (2d Cir. 2008) ("A district court has discretion to hold a hearing to resolve

factual disputes that bear on the court's jurisdiction, but where, as here, the case is

at the pleading stage and no evidentiary hearings have been held, 'in reviewing the

grant of a motion to dismiss [under Rule 12(b)(1)] we must accept as true all

material facts alleged in the complaint and draw all reasonable inferences in the

plaintiff's favor.'") (citations omitted).  In short, under applicable law, at this stage of the case, Trilliant was only obligated to make a *prima facie* showing, based on allegations in its papers, that its service was timely, as measured by the flexible due diligence standard.

Accepting as true the factual allegations made by Trilliant, and drawing all reasonable inferences in its favor, the record before the Bankruptcy Court established that: (i) the Defendant's whereabouts were not reasonably ascertainable by Trilliant prior to February 2015, when he was served at the Quebec Property (A. 211-37); (ii) Mr. Marengere was aware of this adversary proceeding no later than the summer of 2014 when Trilliant contacted his counsel, and could have begun to prepare a defense at that time (A. 211-12); (iii) Trilliant exercised reasonable diligence in seeking to locate and serve the Defendant by hiring a succession of private investigative firms, and seeking to obtain factual information about his whereabouts from his counsel, (A. 184; 218-232); and (iv) there was no basis for concluding that the Defendant suffered any material prejudice as the result of the delay in service of process, or, alternatively, any prejudice he did suffer was the result of his tactical decision to evade service of process.  (A. 185).

The Bankruptcy Court's contrary conclusions, as reflected in the Decision, are premised on its legally erroneous decision to make factual findings and inferences based on a procedurally premature resolution of the parties' competing

narratives, as reflected in their respective pleadings and affidavits, constitutes a clear abuse of the Bankruptcy Court's discretion, warranting reversal of the Order.

## II.    **The Bankruptcy Court Misinterpreted the Service Order**

In reaching the conclusion that Trilliant did not make reasonable efforts at service, the Bankruptcy Court placed particular emphasis on what it characterized as "Trilliant's failure to serve the Defendant by the October 21, 2013 deadline set in the Service Order."  (A. 259); see also id. ("While there are no strict deadlines under Rule 4 for service of a foreign defendant, it is not reasonable for the Plaintiff to invoke the Court's authority to issue an order on foreign service and then proceed to completely ignore the deadline in the resulting order.").

Contrary to Judge Lane's interpretation, however, a careful reading of the plain language of the Service Order, as well as the context in which it was entered, reveals that the Bankruptcy Court (Peck, J.), did not intend to establish a hard deadline for service of the Defendant to the extent he was found in a foreign country, as ultimately proved to be the case.

First of all, the plain language of the Service Order states that "**the time in which the Plan Administrator must effect service** upon any defendant not previously served in connection with the above-captioned adversary proceeding be and hereby **is extended** by one-hundred-eighty (180) days."  (A. 47) (emphasis added).  Since Fed. R. Civ. P. 4(m) expressly excludes foreign service from the

16

scope of its time limitations, it would be meaningless to speak of an "extension" of the time period within which service "must" be effected since there is no clearly defined limitation on how long a party may take to effect service in a foreign country.  See, e.g., Altvater Gessler-J.A. Baczewski International (USA) Inc. v. Sobieski Destylarnia S.A., No. 06 Civ 6510 (HB), 2010 WL 2813617, *3 (S.D.N.Y. July 16, 2010) (refusing to dismiss complaint based on ineffective service of process despite three year, seven month delay in foreign service); United States v. Shehyn, No. 04 Civ. 2003 (LAP), 2008 WL 6150322, *1 (S.D.N.Y. Nov. 26, 2008) (granting motion for alternative service on foreign defendant, and denying motion to dismiss based on untimely service, more than four years and eight months after filing of complaint).

Second, the Bankruptcy Court improperly construed the Service Order as granting relief that was never requested – namely an extension of time to effect service in a foreign country.  As explained by the United States Court of Appeals for the Second Circuit:

> As a general matter, a court decree or judgment "is to be construed with reference to the issues it was meant to decide." . . . Thus, an order "will not be construed as going beyond the motion in pursuance of which the order was made, for a court is presumed not to intend to grant relief which was not demanded."

U.S. v. Spallone, 399 F.3d at 424 (internal citations omitted).

In this case, the motion that led to entry of the Service Order was Trilliant's *Ex Parte* Application in Support of Entry of Order Extending Time To Effectuate Service in Certain Adversary Proceedings dated April 16, 2013, which expressly noted that:

> [T]o the extent that service can be made upon [the Defendant] in [a] foreign countr[y] pursuant to Civil Rule 4(f), the 120-day limitation set forth in Civil Rule 4(m) *is not applicable*. **The Plan Administrator is only seeking an extension with regard to these individual defendants to the extent that he might be able to make service upon them within this United States.**

(A. 41) (italics in original; emphasis added). Trilliant never requested a general extension of its time to serve foreign defendants in foreign countries, and the Bankruptcy Court never established a deadline for effecting such service. And, under Spallone, the Bankruptcy Court's Service Order should not construed in a manner that grants relief that was never requested by Trilliant.

The Bankruptcy Court therefore erred, as a matter of law, when it concluded that Trilliant had failed to comply with a Court-ordered deadline for foreign service. Moreover, because the Bankruptcy Court assigned "particular relevance" (A. 259) to this finding in its overall assessment of the reasonableness of Trilliant's efforts to serve the Defendant, this error was anything but harmless. Instead, it necessarily influenced the Bankruptcy Court's weighing of the factors in the flexible due diligence standard applicable to foreign service, and led to an overall abuse of discretion.

18

The Bankruptcy Court's Order should therefore be reversed, and this matter remanded for further proceedings.

### III.   The Bankruptcy Court's Application of the Flexible Due Diligence Standard Cannot Be Reconciled with the Evidence in the Record

Even if one assumes that the Bankruptcy Court apprehended the correct legal standards, and took proper account of the procedural posture in which it rendered its Decision, the fact remains that its ultimate conclusion – that Trilliant did not exercise reasonable due diligence in attempting to serve Mr. Marengere – simply does not fall "within the range of permissible decisions." Lynch, 589 F.3d at 99. (citations omitted), and thus constitutes an abuse of discretion.

As alleged in Trilliant's papers, Trilliant undertook substantial efforts to locate and serve the Defendant pursuant to Fed. R. Civ. P. 4(f) as provided for by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents.  Those efforts at service began no later than April 2013 (A. 39), approximately three months after the Complaint was filed.  As reflected in the August 7, 2013 report from Legal Language Service, an international process server, while Mr. Marengere's wife had been living at the Quebec Property, Mr. Marengere himself was not.  In fact, by the time of the report, the Quebec Property was "empty and listed for sale."  (A. 196).  The report additionally reflects that Mr. Marengere had previously occupied a different address in the city of Montreal, potentially as late as 2012, but that he had since been evicted.  (A. 196).

19

Following this initial failure at service, Trilliant hired a new investigator, Investigative Solutions Network, Inc. ("ISN"), in an effort to serve Mr. Marengere. As reflected in its September 4, 2013 report, ISN had no success in determining Mr. Marengere's physical location, though it identified a number of companies with which he appears to have been affiliated and attempted to find him at the headquarters of those companies. (A. 197-210). Trilliant thereafter hired yet another investigative service, which was equally unsuccessful in locating Mr. Marengere. (A. 184).

Subsequently, in the summer of 2014, Trilliant's counsel reached out to Mr. Marengere's counsel, Mark Frankel, to determine whether he was in possession of any information that would permit Mr. Marengere to be served. Mr. Frankel advised counsel for Trilliant that, despite being in regular contact with Mr. Marengere, he was not in possession of any information regarding his physical whereabouts. (A. 211-12). As a result, while Trilliant served Mr. Frankel with a subpoena seeking information regarding Mr. Marengere's location, it decided that it would have been futile to seek to enforce that subpoena based on Mr. Frankel's professed lack of knowledge. (A. 286).

Finally, in a last ditch effort to locate and serve Mr. Marengere, in late 2014, Trilliant retained the services of Kroll, Inc. ("Kroll"), a world-renowned private investigative service. (A. 185). After several months, during which time Kroll

discovered that, from 2004 to 2015, Mr. Marengere had owned (through a self-settled trust) a multi-million dollar home in Boca Raton, Florida (A. 184, 191), Kroll's investigations finally revealed that Mr. Marengere had resumed living at the Quebec Property, where he was ultimately served with process by a representative of the Canadian Ministry of Justice on February 20, 2015.  (A. 177-79).

Trilliant respectfully submits that its attempts to serve Mr. Marengere cannot be construed as anything other than a reasonably diligent effort to consummate service of process in this case, particularly in light of the deferential standard of review afforded to a plaintiff's allegations in connection with a motion to dismiss. Accordingly, the Bankruptcy Court's contrary conclusion necessarily constitutes an abuse of discretion.

The factual distinctions between this case and the cases cited by the Bankruptcy Court in support of its Decision further demonstrate that the Decision and Order constituted an abuse of discretion.

For instance, in In re Crysen Montenay Energy Co., the bankruptcy court dismissed the plaintiff's complaint for failure to prosecute, including failure to effectuate service of process, but not in response to the defendant's first motion to dismiss, which was denied without prejudice to permit discovery and additional time to perfect service.  166 B.R. at 548 ("On August 23, 1990, the bankruptcy

court denied, without prejudice, [the defendant's] motion as to the jurisdictional issue" and "ordered [the plaintiff] to conduct discovery to determine [the party served]'s agency status at the time of service."). Two and a half years later, at which time plaintiff had still not taken any discovery concerning the validity of its initial service efforts, the bankruptcy court granted a renewed motion to dismiss based on, among other things, plaintiff's failure to prosecute. Id. at 549.

In In re Southold Development Corp., 148 B.R. 726 (E.D.N.Y. 1992), the district court reversed an order of the bankruptcy court denying a motion to dismiss where service was delayed for more than 120 days for no reason other than "to save money." Id. at 730. The court nevertheless declined to direct the entry of judgment in defendant's favor, noting that, notwithstanding plaintiff's apparent lack of diligence, "defendants failed to show how plaintiff's delay caused them prejudice." Id. The court instead remanded the case for further proceedings with respect to the issue of prejudice.

Similarly, in Pabst Licensing GMBH & Co. KG v. Sunonwealth Electric Machine Ind. Co., Ltd., No. 03 Civ. 1001, 2004 WL 1977441 (N.D. Ill. Aug. 27, 2004), the court granted **_summary judgment_** rejecting the merits of plaintiff's claim, and further dismissed claims against a separate defendant who had yet to be served by the plaintiff, noting that plaintiff had not offered **_any_** explanation concerning why service had not yet been effected. Id. at *8.

The case law from the Second Circuit establishes a similar low bar in service of process cases, holding that a plaintiff must generally offer only a colorable excuse for neglect in order to justify an extended delay in service.  Meilleur v. Strong, 682 F.3d at 61 ("we generally will not reverse a district court's dismissal of action for lack of service **unless the appellant can 'advance some colorable excuse for neglect.**'") (quoting Zapata v. City of New York, 502 F.3d 192, 198 (2d Cir. 2007) (emphasis added).   In both Meilleur and Zapata, the plaintiffs failed to advance *any* "cognizable excuse for the delay."  Zapata, 502 F.3d at 198; Meilleur, 682 F.3d at 64 (noting that plaintiff "offered no explanation to the district court for the multi-month lag between service and her motion to reopen.").

This case presents a stark contrast in that Trilliant offered a meaningful excuse for its delay in service: it could not ascertain the physical location of Mr. Marengere prior to February 2015 despite the best efforts of several private investigators.  Moreover, Trilliant kept the Bankruptcy Court (albeit acting in the person of different judges) informed of its efforts at service in: (i) the Service Motion (A. 39); and (ii) at the status conference held on December 13, 2013 (A. 340-41), following which the case was transferred from Bankruptcy Judge Peck to Bankruptcy Judge Garrity before eventually landing on the docket of Bankruptcy Judge Lane (A. 3), who ultimately heard the Defendant's motion to dismiss and issued the Decision and Order.

23

In view of these key factual and procedural distinctions, the Bankruptcy Court in this case abused its discretion by dismissing the Complaint in connection with an initial pre-discovery motion to dismiss and without the benefit of an evidentiary inquiry into the extent of: (i) Trilliant's diligence, and (ii) the extent of any prejudice suffered by Defendant as a result of the delay in service.

Finally, the Bankruptcy Court's application of Fed. R. Civ. P. 4(m) is inconsistent with the underlying spirit of the Rule.  See Advisory Committee Notes to the 1993 Amendments to Fed. R. Civ. P. 4 ("The new subdivision . . . authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown.  **Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service . . .**") (emphasis added).

It is equally inconsistent with the Second Circuit's expressed preference that cases be decided on the merits.  See Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995) (This Court has expressed on numerous occasions its preference that litigation disputes be resolved on the merits, not by default.") (citations omitted); see also AIG Managed Market Neutral Fund v. Askin Capital Management, L.P., 197 F.R.D. 104, 111 (S.D.N.Y. 2000) (granting extension of time for service of process based on preference for resolution of cases on the merits).

## <u>CONCLUSION</u>

The Bankruptcy Court abused its discretion by granting the Defendant's motion to dismiss despite Trilliant's more than colorable excuse for the delay in service, and the absence of any evidentiary record that would have permitted the Bankruptcy Court to make factual findings contrary to Trilliant's allegations.  The Order should therefore be reversed, and this matter should remanded to the Bankruptcy Court for further proceedings.

Dated:     New York, New York        RICH MICHAELSON
           June 15, 2016             MAGALIFF MOSER, LLP

                                     By:/s/ Eric T. Moser
                                     ROBERT N. MICHAELSON
                                     ERIC T. MOSER
                                     335 Madison Avenue, 9th Floor
                                     New York, NY 10017
                                     646.453.7851
                                     rmichaelson@r3mlaw.com
                                     emoser@r3mlaw.com

CERTIFICATE OF COMPLIANCE WITH FED. R. BANKR. P. 8015

1.      This brief complies with the type volume limitation of Fed. R. Bankr.

P. 8015 because this brief contains 5,857 words, excluding the parts of the brief

exempted by Fed. R. Bankr. P. 8015(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. Bankr.

P. 8015(a)(5) and the type style requirements of Fed. R. Bankr. P. 8015(a)(6) be-

cause this brief has been prepared in a proportionally spaced typeface using Mi-

crosoft Word 2010 in 14-point Times New Roman.


Dated:      New York, New York          RICH MICHAELSON
            June 15, 2016               MAGALIFF MOSER, LLP

                                        By:/s/ Eric T. Moser
                                        ROBERT N. MICHAELSON
                                        ERIC T. MOSER
                                        335 Madison Avenue, 9th Floor
                                        New York, NY 10017
                                        646.453.7851
                                        rmichaelson@r3mlaw.com
                                        emoser@r3mlaw.com